RANDALL *v.* PORT HURON, ST. CLAIR & MARINE CITY
RAILWAY CO.

1. COMPROMISE AND SETTLEMENT—RELEASE—PERSONAL INJURIES—
FRAUD—RESCISSION—TENDER.

Where plaintiff accepted $250 as settlement in full for all
personal injuries, known and unknown, received by him
in a collision while a passenger on defendant's interurban
car, and signed a contract releasing defendant from all
further claims in consequence thereof, before he could
repudiate said settlement on the ground of fraud, and
bring an action to recover his damages, a tender, with-
in a reasonable time of the discovery of the fraud, of the
amount received by him in settlement, was necessary,
in order to place the parties *in statu quo.*

2. SAME—DELAY—REASONABLE TIME.

A rescission by tender of the amount received in settle-
ment of a claim for personal injuries, on the ground of
fraud, not made until two years and a quarter after the
date of said settlement, which delay is in no manner ex-
cused or explained, *held,* not made within a reasonable
time.

Error to Wayne; Webster (Clyde I.), J.   Submitted
April 14, 1921.   (Docket No. 89.)   Decided October
3, 1921.

Case by Nellie M. Randall, administratrix of the
estate of Frank Hayner, deceased, against the Port
Huron, St. Clair & Marine City Railway Company
and another for personal injuries to plaintiff's de-
cedent.   Judgment for defendants on a directed ver-
dict.   Plaintiff brings error.   Affirmed.

*Monaghan, Monaghan, O'Brien & Crowley,* for ap-
pellant.

*Frederic T. Harward* and *Corliss, Leete & Moody,*
for appellees.

On return or tender of consideration for release of claim for
personal injuries set aside on the ground of fraud, see notes
in 35 L. R. A. (N. S.) 660; L. R. A. 1918F, 1073.

STONE, J. The plaintiff has brought error to review a judgment in the Wayne circuit court, where, on motion, at the conclusion of plaintiff's case, the court directed a verdict for defendants. The action was for damages for personal injuries sustained by Frank Hayner, deceased, while he was a passenger riding on one of defendants' south-bound interurban cars operating between Port Huron and Detroit. The injury occurred on June 9, 1917, and was a consequence of a head-on collision between two of defendants' interurban cars. It occurred about one and one-half miles north of St. Clair, the home of Mr. Hayner. The suit was commenced February 25, 1918, and was originally in the name of Frank Hayner as plaintiff, but upon his death, which occurred on May 14, 1919, suggestion of death of plaintiff was filed and the suit was continued in the name of Nellie M. Randall, administratrix. The trial of the case began on September 24, 1919. At the conclusion of plaintiff's case on September 29, 1919, defendants moved for a directed verdict on the ground that deceased and defendants had settled and adjusted plaintiff's claim for the injuries resulting from this wreck by accepting $250 in full settlement of his claim on June 29, 1917,

"and on the ground that this settlement should stand because, under the authorities of this State, there is laches shown in the rescission of the settlement, a tender 27 months, nearly 27 months has expired since the settlement was made. And, second, that the settlement is a legal one. There is no fraud or overreaching shown here for a jury to speculate on."

Before concluding plaintiff's case, the claim agent of defendants was called by plaintiff as an adverse witness for cross-examination. Upon his testifying that he was the claim agent who had secured the releases in question, a tender was made to him for and in behalf of plaintiff of the sum of $250 and interest thereon for 27 months ($278.35) as a return of the money

paid to deceased on June 29, 1917. This tender was refused, and the witness testified that he considered the release a final and definite one; that he so considered it at the time it was given, and that his opinion as to its finality and definiteness had not changed since the time it was given. Upon his refusal, and upon the refusal of defendants' counsel to accept the money, it was deposited with the court. The plaintiff, at the conclusion of the case, amended the declaration, by permission of the court, and against the objection of defendants' counsel, by adding the following:

"That on or about the 29th day of June, 1917, the said defendants, through their servants and agents, and while the plaintiff was in a weakened and highly nervous condition, falsely and fraudulently represented to said plaintiff that he, the said plaintiff, was not injured, and falsely represented and guaranteed that the said plaintiff would recover from his injury within one month.

"That said plaintiff relying upon these false and fraudulent statements, and induced by the duress of said agents, and without knowing that he was signing a release for damages for injuries not known to him at the time, signed said release. That at the time he signed said alleged release, he did not read the same, nor was it fully read to him, and that plaintiff at the time did not know, nor was he informed, that it was a full release."

The statement, receipt and release, being Exhibits 2 and 3, signed by deceased, are as follows:

"Exhibit 2.
"PORT HURON, ST. CLAIR & MARINE CITY
RAILWAY.
"To Frank Hayner, Dr.,
Detroit, Michigan.
"For damages arising from the injury to the said Frank Hayner, who was injured by reason of a collision between said company's cars on which he was a passenger on or about June 9th, 1917, at or near

Yankee street, two miles north of St. Clair, Michigan, being in compromise and settlement of all liability whatsoever, of said company to the said Frank Hayner, arising or to arise out of said accident; release to benefit all companies and persons chargeable with negligence or liability in the premises......$250.00.

O. K. $250.00.

G. A. Chapman, A. G. C. A.

June 29th, 1917.

This account has not been previously vouchered.

Correct, Irwin Fullerton, Auditor.

A. F. Edwards, Treasurer.

"Received June 29th, 1917, of the said company Two Hundred Fifty ($250.00) Dollars in full of the above account.    ($250.00)

"FRANK HAYNER."

"Exhibit 3.
"DETROIT UNITED LINES.

"$250.00.          St. Clair, Michigan, June 29, 1917.

"I, the undersigned, Frank N. Hayner, of St. Clair, Mich., acknowledge the receipt from the Port Huron, St. Clair & Marine City Railway of the sum of Two Hundred Fifty and 00/100 Dollars, in consideration of the payment of which the said railway company is hereby released and discharged from all claims and demands that I have or may have against it for damages on account of loss and personal injuries sustained by me by reason of a collision between said company's cars on one of which I was a passenger on or about June 9, 1917, at or near Yankee street, two miles north of St. Clair, Michigan, the said payment being accepted by me in compromise and settlement of all liability whatever of the said company to me arising or to arise from the said accident; including liability on account of injuries unknown as well as on account of those known, and for consequences that may hereafter develop from injuries as well as liability for consequences now developed; this release to benefit all companies and persons chargeable with negligence or liability in the premises.

"FRANK HAYNER.

"Witness:

"A. A. LEFEVRE,

"A. E. THOMPSON."

The deposition of deceased was taken August 30, 1918, and was introduced in evidence upon the trial. He testified that, at the time of the collision, he was sitting in the front seat of the smoker of the south-bound car, and that as the cars came together he was shoved under the ceiling or roof of the car, with his head wedged down between his knees.    He was immediately taken from the scene of the wreck to the office of Dr. Thompson in St. Clair.    Dr. Thompson had been the family physician of deceased and family, but it was the claim of plaintiff that in this case he was acting for defendants, and there was evidence tending to support that claim.    There was evidence that this physician made only a cursory examination of the deceased to ascertain, apparently, whether or not any bones were broken.    It does not appear that there were any broken bones.    Deceased testified that he at once complained of severe pains in his back which he suffered but that the doctor made no examination of his back on that day; that Dr. Thompson and defendants' claim agent called on deceased the second day following the accident, and although the doctor called on deceased four or five times between the date of the accident and the time of the claimed settlement he gave him no treatments, nor did he prescribe any, except the use of liniment for his back; that on the first visit that the claim agent and the doctor made, some suggestion about money was made by the former, the succeeding visit of the claim agent and the doctor resulting in the payment by the defendants to deceased of $250 by check on June 29, 1917, and the signing by deceased of Exhibits 2 and 3.    Up to this time deceased was confined to the house nearly all the time, and was sitting or lying down most of the time.    He walked down town once during this period, but had to be helped home.    Be-

215—Mich.—27.

tween the middle of July and the first of August, 1917, deceased resumed his work, that of an oiler on the boat on which he had formerly worked, and went to Chicago for that purpose. He gradually grew worse while on the boat until he finally collapsed, and was taken off the boat on November 17, 1917, and taken to his home in St. Clair. He was on November 26, 1917, taken to the United States Marine Hospital in Detroit and remained there substantially all of the time until his death on May 14, 1919.

There was evidence that deceased, prior to this accident, was strong and robust; that he was 43 years old at the time, and the only prior illness or disability was an attack of pneumonia 12 years prior. He had sailed on the Great Lakes since he was 18 years old.

The defendants offered no evidence, and, so far as this appeal is concerned, there is no dispute that this injury was the cause of death.

The trial court, in its charge to the jury directing a verdict for the defendants, stated certain controlling facts, as appearing in evidence, the principal one being that deceased knew, when he signed Exhibits 2 and 3, that he was settling his claim for damages, and that he was making a settlement with the companies for $250.

A careful reading of the record has convinced us that the court was fully justified in its statement of facts, and that it reached the correct conclusion in the case. We shall quote somewhat at length from the charge, as follows:

"Gentlemen of the jury: I believe that it is my duty, under the law of Michigan, as I see it, to direct a verdict in this case. As you have seen, or heard, on June 29, 1917, defendant paid the plaintiff $250, and he signed Exhibits 2 and 3 which are releases of all further liability. In the case of *Niederhauser* v. *Railway Co.*, 131 Mich. 550, the court decided that one who seeks to rescind a settlement for fraud or mistake

must first place the other party *in statu quo.* In other words, our Supreme Court held in this case that if one seeks to rescind a settlement on the ground of fraud, he must first tender back the money received in the settlement.     In the case of *Crawley* v. *Studebaker Corporation,* 183 Mich. 462, the plaintiff accepted $42.50 from his employer and gave a receipt in full for personal injuries and damages sustained, the amount of the payment representing the time which plaintiff had lost.     He claimed that he did not read the release, or know what it contained, that he signed it in reliance upon the advice of the physician employed by defendant in such cases, who told him that his injuries were not permanent.     The trial court directed a verdict for defendant for the reason that the amount received had not been tendered back. And the court held that the receipt and the release was conclusive against the plaintiff's right of recovery. The court said on page 465 :

" 'With respect to the error specially assigned, it is contended by the appellant that he made a case relieving him from the duty of tendering to defendant the money it had paid to him in settlement.     (Citing cases) in which cases the principle applied is that, as with respect to a disputed or unliquidated demand, an accord is matter of contract, preceding or accompanying satisfaction, if the contract is not made and the money paid and received pursuant thereto, but the money is paid and received on some other account, it need not be tendered back before bringing suit upon the demand.'  *  *  *

"On page 468 the court says:

" 'But there is no room for the application of the doctrine in the case at bar, because the evidence that plaintiff and defendant did reach an agreement with respect to compensation for plaintiff's injuries is very clear.'     (Here follows a further quotation from the *Crawley Case.*)

"In the case of *Burns* v. *Estate of Reading,* 188 Mich. 591, in proceedings against a decedent's estate to secure compensation for personal injuries, defendant estate claimed that the injured employee had accepted $250 in full settlement and satisfaction, and had executed a release under seal, for his broken leg. The limb failing to knit, claimant attempted to re-

pudiate the settlement and recover for his injury, which resulted in amputation, charging the physicians with fraudulently misrepresenting to claimant his true condition. He made no complaint of the alleged fraud during upwards of 20 months after the date of the release. The court held that he had ratified the release by long acquiescence, and could not repudiate it for fraud after so long a period. In this case the court held that one who seeks to rescind a compromise for fraud must act promptly after discovering the wrong, and must return the consideration received in full. While there is still some real conflict in the cases as to whether or not there has to be a tender of the amount received when it is sought to set a release aside on the ground of fraud, by the weight of authority the cases divide themselves into two classes, *first*, where the fraud goes to inducing the injured party to sign a release, the effect of which he understands. And, *second*, where that fraud is in inducing him to sign a release under the belief that he was signing something else. I am satisfied that Michigan has recognized this distinction and has held, in the cases already cited, that where the fraud goes to inducing the injured party to sign a release, tender of the amount received has to be made within a reasonable length of time after discovery of the fraud. In other words, if a party claims that he was induced, through fraud, to enter into the contract, in order to rescind that contract, he must put the parties *in statu quo*. That is, he must return the money that he received, and ask to have the contract or agreement or release set aside on the ground that he entered into it through fraud. If that is the situation in the case at bar, if the deceased signed these releases through fraud, through the doctor and the claim agent telling him that he was not hurt, and that they would guarantee that he would be well within a month, and that was not true—in other words, if they fraudulently induced him to sign those releases upon those grounds, and it turned out they were not true, in order to set aside those releases that he had signed, he would have to tender back that $250 within a reasonable length of time after he found that they had practiced fraud on him. Now, when did he find that out? The re-

leases are dated on the 29th of June, 1917. He went to work on the boat a few weeks after that, was not well, was not well at any time after signing the releases, according to the testimony, but got worse after that, and finally collapsed on the boat and had to come home, sometime in November, 1917. You may say that he knew it then. He did not get well within a month, as the doctor had guaranteed he would, and it began to look as though he was seriously hurt, that they had practiced fraud upon him. It is now 27 months since he signed these releases, it is nearly two years since he came back from the boat and found he was hurt. He went to the hospital in the fall, and again in the next spring. It is over a year and a half since he went into the hospital. Suit was started on February 25, 1918, a year ago last February and still no tender back of this money was made until today, the 29th of September, 1919. I am not prepared to say just what day it was that he discovered this fraud that had been practiced upon him. It was some time between November, 1917, and February, 1918, and I believe that he had to return that money within a reasonable length of time after that, and it is impossible for me to hold that this is a reasonable length of time after the discovery of the fraud."

The court then referred to *Porth* v. *Cadillac Motor Car Co.*, 198 Mich. 501, and distinguished it from the instant case. The court further said:

"So, in this case, if the testimony showed that he signed one paper, signed this paper, thinking that it was a receipt simply for some money, and that what he was going to get at the end of the year, or some other time, was left open, then it would be a question for you gentlemen to decide whether or not that was the contract that he entered into, or whether he gave an out and out release. I am unable to find from the testimony in this case that he thought that. It seems to me that this is a case where the fraud was in inducing him to sign the release. He knew he was making a settlement with the company. He knew he was settling with them for $250. He thought he would take a chance—he was advised that there was nothing the matter with him, and that he would be

well within a month, and so, as he says himself; he took a chance and signed. There was nothing left open, there was not to be any further payment that I can find. It was not a part release. He simply was induced, through fraud, as they claim now, to sign a release. It turned out that he was not well in a month, and never did get well. It looks as though he was badly hurt, from the testimony, this injury to his spine caused him a great deal of suffering, and he finally died after many months. If there was fraud practiced, it seems to me from this testimony, as I say, it was in misrepresenting to him his condition at the time he signed the release, and getting him to sign for a small amount like $250 by covering up his real condition and falsely leading him to believe that he was not hurt when he was. Under these circumstances, as I say, it seems to me, that he would have to return the money paid, before he could sue, and has to return it within a reasonable length of time after discovery of fraud."

The court then quoted at length from the testimony, after which it directed a verdict for the defendants.

Appellant's counsel admit in this court that the trial court correctly distinguished between the two classes of fraud, the first being frequently referred to as fraud in the inducement, and the second as fraud in the execution, but they contend that the court erred in its interpretation of the law respecting these two classes, and also in its finding and application of the facts to the law. The questions are discussed under appropriate assignments of error.

It is urged that a tender of the money received is not a prerequisite to the beginning of suit where settlement is induced by fraud. It is conceded that in the *Porth Case* language was used indicating that if the alleged fraud had been in the inducement, a tender would have been necessary, but it is said that that language was unnecessary to a determination of the case, and they assume that the point has not been definitely decided by this court. Counsel cite

many cases from other jurisdictions in support of their claim. On the other hand, counsel for defendants claim that a tender was necessary, and that our reports are replete with authorities on this subject, and that it is not necessary to review cases in other jurisdictions, and the following cases are cited, in addition to those referred to by the trial court: *Wilbur* v. *Flood*, 16 Mich. 40; *Pangborn* v. *Insurance Co.*, 67 Mich. 683; *Slater* v. *Insurance Co.*, 133 Mich. 347; *Wendt* v. *McGuire*, 194 Mich. 453; *Hubbard* v. *Oliver*, 173 Mich. 337; *Kimble* v. *Gillard*, 177 Mich. 250; *Ortmann* v. *Fletcher*, 117 Mich. 501.

In the *Slater Case*, Justice CARPENTER, speaking for this court, said:

"He brought this suit without returning or tendering the money received by him when said adjustment was made. It is conceded that, under the decisions of this court (see *Pangborn* v. *Insurance Co.*, 67 Mich. 683), this he could not do, unless defendant had waived said tender."

See, also, the language of Justice MOORE in the *Niederhauser Case*, cited by the trial court. It is true that all of the above cited cases were not personal injury cases, but we know of no reason why the principle there announced should not apply to personal injury cases. In our opinion, both upon reason and authority, it should be held that defendants could rely upon settlement until rescission by repudiation and tender. Tender back would bring before the court the question of right to repudiate; but repudiation or right to repudiate could not arise until after tender. The law favors settlements made by parties. When made, they are binding until rescinded for cause. Rescission is not completed without tender back of amount received. While binding, no suit in opposition, or repudiation of a settlement can be brought. We do not agree with the claim of appel-

lant that no tender is necessary at any time, if it is apparent that it would not be accepted. Such tender is necessary to rescind the contract of settlement. Neither do we agree with the contention that the starting of suit on the original claim was a sufficient repudiation of the settlement.

We think it appears undisputed by this record that deceased knew what he was signing and what he was settling. It is finally contended by appellant that, if any tender was necessary, the tender made on the trial was sufficient. We think not, for the reasons stated and for the further reason that the tender was not made within a reasonable time. The long period of delay from the date of settlement to date of tender at the trial, of two and a quarter years, cannot be said to be a reasonable time as matter of law. *Jewett* v. *Petit,* 4 Mich. 508; *Hubbardston Lumber Co.* v. *Bates,* 31 Mich. 158, 168.

This delay was in no manner excused or explained. Upon this subject generally, see 8 Cyc. pp. 531, 533; 12 C. J. pp. 345-357.

The judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.