# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH HUTCHINS,

Plaintiff-Appellee,

v

HOLLY AREA SCHOOLS, DAVID NUSS, and
PEGGY KREAMER,

Defendants-Appellants.

UNPUBLISHED
September 25, 2018

No. 339213
Genesee Circuit Court
LC No. 2017-108800-CZ

Before: M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Plaintiff sued defendants under the Whistleblower's Protection Act (WPA), MCL 15.362 et seq., for wrongful discharge. Defendants moved for summary disposition because the parties had previously entered a settlement agreement and release and plaintiff had not before filing his lawsuit tendered to defendant Holly Area Schools (the district) the consideration recited in the agreement as required by *Stefanac v Cranbrook Educational Community (After Remand)*, 435 Mich 155; 458 NW2d 56 (1990). The trial court denied defendant's motion "with prejudice" by order entered June 22, 2017. This Court granted defendants' application for leave to appeal and also stayed proceedings in the lower court "pending resolution of this appeal or further order of this Court."[1] We reverse and remand for entry of summary disposition in favor of defendants.

## I. SUMMARY OF PERTINENT FACTS

On January 30, 2017, plaintiff Joseph Hutchins, defendant Holly Area Schools, and the Holly Education Association, MEA/NEA[2], entered a settlement agreement and release to memorialize the terms and conditions of the separation of plaintiff, a tenured teacher, from his employment with the school district. Plaintiff's signed letter of resignation dated January 30, 2017, effective March 31, 2017, was attached to the agreement. Paragraph 2 of the settlement agreement and release recites its consideration as follows:

---

[1] *Hutchins v Holly Area Schools*, unpublished order of the Court of Appeals, entered August 16, 2017 (Docket No. 339213).

[2] The president of the teachers union signed the agreement on January 31, 2017.

-1-

The Employee [plaintiff] will receive his salary through March 31, 2017, subject to state and federal tax withholding. The Employee shall remain on paid administrative leave. The District further agrees to continue the Employee's health insurance to June 30, 2017, consistent with the provisions of the Collective Bargaining Agreement. The Employee shall make insurance premium contributions by the first of each month. Failure to make such contributions shall result in the Board's ceasing insurance coverage. If the employee is employed in a professional capacity which provides health insurance, the district shall have no further obligation to continue such insurance. The Employee shall notify the district within ten (10) days of such employment.

Thus, the consideration for plaintiff's entering the release agreement included his remaining on paid administrative leave, receiving his salary through March 31, 2017, and also the district's providing health insurance benefits (with plaintiff's contribution in accordance with the teachers' union contract) through June 30, 2017. Also, the settlement agreement and release provided that "upon receipt of an employee reference request," defendant district would "provide a neutral letter reflecting the positions held and dates of service." The settlement agreement also provided that when required by a request made pursuant to MCL 380.1230b, the district "shall disclose that unprofessional conduct occurred by use of excessive force . . . ." The terms of this potential disclosure were set forth in an attachment that read: "At the time of Mr. Hutchins resignation, there was an ongoing investigation regarding the use of excessive force. The investigation was not completed."

Paragraph 7 of the settlement agreement and release contained plaintiff's very broad "discharge and release" of defendant district and its employees or agents from "any and all claims, complaints, charges, demands, grievances, claims for arbitration, and/or other causes of action (pending or contemplated) of any kind which [plaintiff] currently has or may claim to have against any of the above . . . ." The release specifically extended to claims or grievances for "breach of contract, wrongful discharge, constructive discharge, violation of constitutional rights, discrimination with respect to disability, age, sex, religion, race, national origin, veteran's status and/or marital status which may have arisen under the Federal Civil Rights Acts, the American's with Disabilities Act, . . . the Michigan Elliott-Larsen Civil Rights Act, . . . Whistleblowers Protection Act, retaliation, and other pertinent state and federal statutes." Further, the release pertained to any "kind of contractual, legal or equitable claim arising during and from [plaintiff's] employment and/or resignation and separation from employment . . . including (but not limited to) any and all of the circumstances leading to his resignation and separation pursuant to the terms" of the settlement agreement and release.

Paragraph 9 of the settlement agreement and release states that plaintiff acknowledged that he had been given up to 21 days to consider the terms of the agreement before accepting and signing it, that he had the opportunity to consult with legal counsel of his own choosing, and that he was provided a period of 7 days following his execution of the agreement within which to revoke it. Paragraph 12 of the settlement agreement and release states that plaintiff acknowledges that he consulted with his union representatives, reiterates that he had an opportunity to consult with legal counsel of his choice, and that his resignation and execution of the settlement agreement and release were voluntary and done with full knowledge of the consequences. Paragraph 14 recites that plaintiff "represents and acknowledges that before

-2-

signing this release he read the same, fully understands its terms, content and effect and has relied fully and completely on his own judgment in executing this release."

All parties apparently complied with the terms of the settlement agreement and release until March 21, 2017, when plaintiff filed his complaint against defendants alleging claims for violation of the WPA and for breach of public policy. Plaintiff alleged that defendants "forced him to either (1) resign from [his teaching position with defendant district] or (2) be forced to have a record of harming a student . . . ." Before filing his lawsuit, plaintiff did not return to defendant district any of the consideration recited in the release—payments of his salary or defendant district's share of his insurance premiums. Plaintiff also did not seek to rescind the settlement agreement and release, or did he even mention it in his complaint.

In response to plaintiff's complaint, defendants moved for summary disposition under MCR 2.116(C)(7) and (8). Defendants asserted that plaintiff's claims were barred by the plain language of the settlement agreement and release. More specifically, defendants argued that plaintiff had not pleaded any reason the release should be determined invalid and argued that plaintiff was legally estopped from challenging the validity of the release because he had not tendered back to defendant district the consideration it paid plaintiff as required by *Stefanac*.

Plaintiff responded to the motion alleging that defendants obtained the settlement and waiver from him through coercion, duress, and overreaching by threatening him with criminal charges and loss of his pension. Plaintiff also argued that he was ready and willing to tender back the consideration defendant paid him but could not do so because defendants had not told him the exact amount due. Plaintiff stated in an affidavit that his union representative advised him that unless he resigned, he could be subject to a criminal prosecution and lose his pension. Plaintiff also stated that defendants' threats created duress and forced him to sign the release.

At the conclusion of counsels' oral arguments on defendants' motion, the trial court accepted plaintiff's argument that he did not have to tender back the consideration received under the settlement agreement and release where defendants failed to specify the exact amount of the consideration plaintiff needed to repay. The trial court reasoned that "*Stefanac* is saying that [defendants are required] to look at [plaintiff] and say, you owe us "x" amount of money for the health benefits, "x" amount of money for the pay up to a certain date, and you must pay that if you want to repudiate the release, and I don't see where that happened." The trial court also ruled that it was "denying with prejudice the *Stefanac* argument about the tendering because I don't understand that the school board recited any consideration."

After the trial court's ruling from the bench, defense counsel orally moved the court to stay proceedings pending the filing of an application for leave to appeal, which the trial court denied. The trial court entered its written order on June 22, 2017, denying defendants' motion for summary disposition in accordance with its rulings from the bench and also denying a stay of proceedings. As noted already, this Court granted defendants' application for leave to appeal and also stayed proceedings in the lower court by order entered August 16, 2017.

II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision regarding a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion for summary disposition under MCR 2.116(C)(7) asserts that a claim is barred by immunity granted by law and need not be supported or opposed by affidavits, depositions, admissions, or other documentary evidence. *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 25-26; 703 NW2d 822 (2005). The allegations of the complaint are accepted as true unless contradicted by documentary evidence. *Maiden*, 461 Mich at 119. The motion is properly granted when the undisputed facts establish the moving party is entitled to immunity granted by law. *Kincaid v Cardwell*, 300 Mich App 513, 522-523; 834 NW2d 122 (2013); *By Lo Oil Co*, 267 Mich App at 26.

The interpretation of clear contractual language is an issue of law also reviewed de novo on appeal. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003).

## III. ANALYSIS

A party that has knowingly signed a settlement agreement and release of liability may not sue in contravention of the agreement or challenge the agreement unless before or simultaneously with doing so the party tenders the consideration recited in the agreement, or unless tender is waived by the party released. See *Stefanac*, 435 Mich at 159, 164-165, 176; *Rinke v Automotive Moulding Co*, 226 Mich App 432, 436, 573 NW2d 344 (1997)("[A] plaintiff must tender before he may even attempt to repudiate the release."). In this case, the trial court erred by denying defendants' motion for summary disposition because plaintiff did not tender to defendant district the consideration recited in the settlement agreement and release before or simultaneously with the filing of his lawsuit. Consequently, by its plain terms, the release bars plaintiff's legal claims against defendants and his equitable claims to rescind the settlement agreement. *Stefanac*, 435 Mich at 171-172; *Dresden v Detroit Macomb Hosp Corp*, 218 Mich App 292, 297; 553 NW2d 387 (1997).

There are two and only two recognized exceptions to the tender-back rule as a precondition to suing in contravention of a release. "Under Michigan law, a plaintiff is excused from the tender-back requirement *only* if the defendant waives the duty or the plaintiff demonstrates fraud in the execution." *Collucci v Eklund*, 240 Mich App 654, 659; 613 NW2d 402 (2000)(emphasis added). "The *only* recognized exceptions in Michigan are a waiver of the plaintiff's duty by the defendant and fraud in the execution." *Stefanac*, 435 Mich at 165 (emphasis added). Defendants did not waive the tender requirement; they filed a timely motion for summary disposition based on its terms and the failure of plaintiff to tender to defendant district the consideration recited in the agreement (salary and the cost of insurance benefits).

The only other exception to the tender requirement as a condition for suing in contravention of the release or challenging the release is fraud in the execution. *Stefanac*, 435 Mich at 165; *Collucci*, 240 Mich App at 659. " 'Fraud in the execution' or factum means the proponent of the instrument told the signatory thereof that the instrument really didn't mean what it clearly said, and that the signatory relied on this fraud to his detriment." *Paul v Rotman*, 50 Mich App 459, 463-464; 213 NW2d 588 (1973). In this case, there is no dispute plaintiff knew what the documents said when he signed the settlement agreement and release. In his answer to defendants' motion for summary disposition and in his affidavit, plaintiff does not assert that he

signed the settlement agreement and release believing it to be something else. See *Stefanac*, 435 Mich at 166, quoting *Randall v Port Huron, St C & MC R Co*, 215 Mich 413, 420, 424; 184 NW 435 (1921). While plaintiff alleges he resigned his teaching position and signed the settlement agreement and release because he felt coerced and under duress because of the dire consequences he faced—being fired, losing his pension, and possibly even criminal prosecution—there is no evidence that he did not know what he was signing.

Indeed, by signing the release, plaintiff stated that he had ample time to review and understand the content of the agreement. Plaintiff acknowledged that he had been given up to 21 days to consider the terms of the agreement before accepting and signing it, that he had the opportunity to consult with legal counsel of his own choosing, and that he was provided a period of 7 days following his execution within which to revoke the agreement. In paragraph 12 of the settlement agreement and release, plaintiff acknowledges and reiterates that he had an opportunity to consult with legal counsel of his choice and that his resignation and execution of the settlement agreement and release were voluntary and done with full knowledge of the consequences. Paragraph 14 of the release recites that plaintiff "represents and acknowledges that before signing this release he read the same, fully understands its terms, content and effect and has relied fully and completely on his own judgment in executing this release."

There is absolutely no evidence to rebut "the presumption that . . . plaintiff executed the release knowingly and that the recited consideration was received." *Stefanac*, 435 Mich at 164-165; see also *Collucci*, 240 Mich App at 659 (applying the tender-back rule where there was no evidence that the plaintiff did not know that he was signing a release). The consideration recited in the settlement agreement and release was salary and insurance benefits. This Court has applied the tender-back rule in other cases where the consideration recited in a release is payment of salary, or provision of other benefits, like insurance coverage. See *Collucci*, 240 Mich App at 656 ("a year's salary . . . accrued vacation time, and continue certain employee benefits emphasis"); see also See *Davis v Bronson Methodist Hosp*, 159 Mich App 251, 251; 406 NW2d 201 (1986). Plaintiff cannot attack the release on the basis of duress or coercion because he "must tender the recited consideration before there is a right to repudiate the release." *Stefanac*, 435 Mich at 165. Because no evidence supports either exception, plaintiff was required to tender the consideration recited in the settlement agreement and release. *Id*.

The trial court erred by creating a new exception to the tender-back rule that requires the party released from liability to aver in an affidavit the amount of consideration paid for the release before a plaintiff is obligated to tender consideration recited in the release. The trial court erroneously converted plaintiff's obligation to repay consideration "recited in the agreement" to defendants' burden to demand of plaintiff that "you owe us 'X' amount of money." The *Stefanac* Court held that "a plaintiff must, in all cases where a legal claim is raised in contravention of an agreement, tender *the consideration recited in the agreement* prior to or simultaneously with the filing of suit." *Stefanac*, 435 Mich at 176 (emphasis added). Thus, the trial court's ruling is directly contrary to the holding of *Stefanac*, which opined its ruling was "necessary in order to preserve the stability of release agreements." *Id*. at 177. The trial court's ruling would create the very grace period that the *Stefanac* Court rejected because it would allow a plaintiff to retain the benefit of settlement agreement while at the same time bringing suit in contravention of the release contained in the agreement. *Id*. The *Stefanac* Court made clear that the beneficiaries of a release need not take affirmative steps to enjoy its protection "because until

plaintiff tenders the consideration recited in the release, it is the existence of the release and its terms which prohibit the plaintiff from bringing suit." *Stefanac*, 435 Mich at 169 n 15.

Moreover, plaintiff's claim that he did not know the amount of consideration to tender defendant district is disingenuous. Clearly, plaintiff would be aware of the salary that he received from defendant district pursuant to the settlement agreement and release simply by reviewing his pay stubs or deposits to his bank account. The cost of the school district's share of plaintiff's health insurance premiums could also easily be calculated or discovered. At oral argument on the motion for summary disposition, plaintiff's counsel admitted that as a public employee, plaintiff received annual statements indicating the value of his various employee benefits. Also, review of plaintiff's previous years' W-2 would have provided an amount to calculate the monthly cost of plaintiff's health insurance.[3] For a more accurate assessment of the cost involved, plaintiff could have simply contacted the school district's accounting department. Thus, there was no factual impediment to plaintiff complying with the tender-back rule, and no legal excuse. "Plaintiff has not raised either exception and thus is not relieved of the duty to tender the consideration recited in the release." *Stefanac*, 435 Mich at 165. Plaintiff may not retain the benefit of an agreement and at the same time take action in contravention of the agreement. *Id*. at 177. Consequently, the trial court should have granted summary disposition to defendants.

Plaintiff also argues that the trial court properly denied defendants' motion for summary disposition because the motion was premature. According to plaintiff, discovery should be completed, and plaintiff should then have the opportunity to amend his pleadings. See MCR 2.118. Plaintiff's vague argument that he should be permitted to amend his complaint is without merit. This Court has already rejected use of the amendment procedure and the relation-back provision of MCR 2.118(D) to save a plaintiff from failing to comply with the tender-back rule before filing a lawsuit in contravention of the terms of a release. See *Rinke*, 226 Mich App at 437 ("We hold that plaintiffs may not use the relation-back doctrine to create the kind of 'grace period' disallowed in *Stefanac*."); see also *Collucci*, 240 Mich App at 661 n 3("[T]his Court has previously held that a plaintiff's attempt to tender back consideration, when made in an amended complaint challenging the release, does not relate back to the date of the original complaint.") Consequently, plaintiff's argument fails.

The main goal of contract interpretation is to enforce the parties' intent. *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004). The words of a contract are interpreted according to their plain meaning. *Schroeder v Terra Energy, Ltd*, 223 Mich App 176, 182; 565 NW2d 887 (1997). When the words of a contract are clear and unambiguous, the contract must be enforced according to its terms. *Burkhardt*, 260 Mich App at 656.

In this case, for the recited consideration, plaintiff and defendant district entered into a settlement agreement and release, which included a broad discharge and release of liability in favor of the school district, its board, board members, administrators, employees or agents from any and all claims, complaints, charges, demands, grievances, claims for arbitration, and other

---

[3] An employer's cost of providing health insurance is listed on a W-2 for under box 12, code DD.

causes of action, including for breach of contract, wrongful discharge, constructive discharge, violation of constitutional rights, Whistleblowers Protection Act, retaliation, and any action under state or federal statutes. The "discharge and release" extended to any "kind of contractual, legal or equitable claim arising during and from [plaintiff's] employment and/or resignation and separation from employment with" the school district. Furthermore, plaintiff agreed "not to file, institute or pursue any such litigation and/or proceedings." The settlement agreement and release plainly barred plaintiff's complaint. The terms of the settlement agreement and release must be enforced as written. *Stefanac*, 435 Mich at 177-178; *Burkhardt*, 260 Mich App at 656.

We reverse and remand for entry of summary disposition in favor of defendants. We do not retain jurisdiction. As the prevailing parties, defendants may tax their costs. MCR 7.219.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood