# STATE OF MICHIGAN

# COURT OF APPEALS

---

SMITH LIVING TRUST and ESTATE OF
REGINALD SMITH, by DAVID SMITH, as
Trustee and Personal Representative, and on behalf
of all others similarly situated,

FOR PUBLICATION
October 30, 2018
9:00 a.m.

Plaintiff-Appellant,

v

No. 338638
Wayne Circuit Court
LC No. 16-004191-CK

ERICKSON RETIREMENT COMMUNITIES,
HENRY FORD VILLAGE, INC., REDWOOD-
ERC MANAGEMENT, LLC, doing business as
ERICKSON LIVING MANAGEMENT, LIFE
CARE SERVICES, SENIOR CAMPUS
SERVICES, LLC, and SENIOR CAMPUS
LIVING, INC.,

Defendants-Appellees.

---

Before: MURRAY, C.J., and BORRELLO and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J.

Acting as personal representative and successor trustee, respectively, of the estate and trust of his deceased father Reginald Smith (decedent), plaintiff David Smith appeals as of right from the trial court's order granting defendants summary disposition under MCR 2.116(C)(10)[1] of all claims in this action. We affirm.

---

[1] Defendants moved for summary disposition under MCR 2.116 (C)(7), (C)(8), and (C)(10), and the trial court did not explicitly state the subpart under which it ruled. However, when announcing its ruling, the trial court did not seemingly conclude that any of plaintiff's claims were barred for purposes of (C)(7), and it considered evidence outside the pleadings and the several documents that constitute the parties' written agreement. Thus, we review the trial court's decision under MCR 2.116(C)(10). See *Sisk-Rathburn v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 425, 427; 760 NW2d 878 (2008); *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).

-1-

## I.  FACTUAL BACKGROUND

### A.  INTRODUCTION

Decedent resided in a unit at the Henry Ford Village Continuing Care Retirement Community (the retirement community) in the years immediately preceding his death.  The retirement community is owned by defendant Henry Ford Village, Inc. (HFV), and it was managed, at various times, by the other defendants.  Decedent was required to pay a "refundable entrance deposit" for his unit.  The entirety of this deposit was "refundable" to decedent's estate or trust as of decedent's death in 2013, subject to several conditions precedent, and minus certain fees that plaintiff does not challenge.  HFV refunded most, but not all, of the remainder of decedent's entrance deposit, pursuant to an agreement with plaintiff, which in turn was pursuant to a provision of decedent's contract with HFV.  The gravamen of this case is plaintiff's contention that HFV should have refunded the entirety of decedent's deposit, notwithstanding the terms of decedent's contract with HFV or plaintiff's agreement with HFV.  At oral argument, plaintiff conceded that HFV violated none of the terms of its contract with the decedent or agreement with plaintiff, as those documents are actually written.

One of the conditions precedent to a refund was re-occupancy of decedent's unit by a new resident, including the payment of a new entrance deposit.  Decedent's unit remained unoccupied approximately nine months after it was vacated.  HFV suggested to plaintiff that, due to the decline in the real estate market, the unit was priced too high at $152,000.00.  Plaintiff agreed to a reduction in the unit's entrance deposit.  In 2016, decedent's unit was re-occupied for an entrance deposit of $136,000.00.  Under the agreement and one of the contractual provisions in the Residence and Care Agreement (the RCA), if a unit's re-occupancy entrance deposit is reduced, any refund of the original deposit will be likewise reduced.  Consequently, HFV issued a check to plaintiff in the amount of $126,861.93, reflecting the reduced entrance deposit and the subtraction of the unchallenged fees.  Plaintiff asserts that, notwithstanding the agreement to the lesser amount, $16,000.00 of decedent's entrance deposit refund remains outstanding.

### B.  CONTRACTS AND DOCUMENTS EXECUTED BY DECEDENT

Several contracts and other documents are at issue in this matter.  On May 22, 2006, decedent executed a "Refund of Entrance Deposit Form," which, in relevant part, stated that "the Resident" (i.e., decedent) was

> entitled to a refund of the Entrance Deposit . . . under certain specified conditions during Resident's lifetime or upon Resident's death based upon termination of the applicable Care Agreement.  The conditions for the refund of the Entrance Deposit are set forth in the Care Agreement.

The form further expressly advised the Resident to "review this Refund Form with an attorney or other estate planning professional prior to execution . . . "  Finally, the form provided, immediately above the signature line, that "Resident hereby acknowledges that he or she has read the following preliminary statements and instructions, reviewed the attached options for a refund of the Entrance Deposit, and understands the purpose and consequences of this Refund

-2-

Form." Decedent nominated himself, as trustee of his revocable living trust (the trust), as sole beneficiary of any refund of his entrance deposit.

On June 8, 2006, decedent executed several more documents. One of those was a single-page document entitled "Helpful Information Regarding Your Refund of Entrance Deposit and Your Residence and Care Agreement." This document described itself as "a brief and general overview of some sections of the Residence and Care Agreement," but cautioned that it "is not meant to replace the Residence and Care Agreement nor supercede [sic] any of its terms . . . " It stated, in relevant part, that "[i]n general, in the event of death of a resident, the entrance deposit will be refunded within 30 days of their apartment being re-settled (a new entrance deposit has been placed on that apartment)." The document did not mention any reduction in the entrance deposit. It concluded by stating that "[y]our Residence and Care Agreement is designed to offer you many protections," and inviting the resident to discuss any questions about the RCA with HFV's Marketing Office.

The same day, decedent executed another single-page document entitled "Receipt of Disclosure Statement." In relevant part, decedent acknowledged that he had received and had sufficient time to review[2] a disclosure statement required by the Living Care Disclosure Act (LCDA), MCL 554.801 *et seq.*; specifically by MCL 554.819.[3] The disclosure statement itself, which included a table of contents, provided, in relevant part:

<u>REQUIRED DISCLOSURES</u>

1.     YOU HAVE THE RIGHT TO CANCEL YOUR PURCHASE AND RECEIVE A FULL REFUND WITH SEVEN (7) DAYS AFTER YOU HAVE EITHER MADE A DEPOSIT AND RECEIVED A COPY OF THIS DISCLOSURE STATEMENT OR EXECUTED THE RESIDENCE AND CARE AGREEMENT AND RECEIVED A COPY OF THIS DISCLOSURE STATEMENT. YOU **CANNOT** BE REQUIRED TO MOVE INTO THE FACILITY BEFORE THE EXPIRATION OF THIS 7 DAY PERIOD.

2.     THE SIGNING OF A LIFE INTEREST OR LONG TERM LEASE IS AN INVESTMENT THAT MAY INVOLVE A HIGH DEGREE OF RISK AND YOU SHOULD SEEK ADVICE FROM AN ATTORNEY OR OTHER FINANCIAL ADVISOR INDEPENDENT OF THE FACILITY.

3.     **THIS DISCLOSURE STATEMENT IS REQUIRED BY LAW TO CONTAIN ALL MATERIAL FACTS REGARDING THE OFFERING MADE HEREBY. THE MICHIGAN OFFICE OF FINANCIAL AND**

---

[2] Plaintiff admitted at oral argument that decedent had been given all of the documents ahead of time and the opportunity to review them before returning to sign them.

[3] The LCDA was repealed effective April 2, 2015, by 2014 PA 448, and replaced by the Continuing Care Community Disclosure Act, MCL 554.901 *et seq*.

**INSURANCE SERVICES HAS NOT PASSED UPON THE ACCURACY OF THIS DISCLOSURE STATEMENT, NOR HAS THE OFFICE APPROVED OR DISAPPROVED THE OFFERING DESCRIBED HEREIN. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL AND SHOULD BE REPORTED . . .**

4. NO PERSON IS AUTHORIZED TO MAKE ANY PROMISES IN CONNECTION WITH THIS OFFERING OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT.

\* \* \*

## SECTION 5 - ENTRANCE DEPOSITS (SUMMARY)

The one-time refundable Entrance Deposit must be paid by the resident of each Living Unit, with 10 percent due upon signing a Residence and Care Agreement and the remainder due prior to occupancy. A list of the current Entrance Deposits is attached as Exhibit 2. The Entrance Deposit is determined by the size of and amenities available in the living unit. The Entrance Deposit is 100% refundable in accordance with the terms of the Residence and Care Agreement.

\* \* \*

## SECTION 7 – OTHER SERVICES AND CHARGES

\* \* \*

Residents have no further financial obligations to Henry Ford Village other than those described in the Residence and Care Agreement, attached as Exhibit 6.

\* \* \*

## SECTION 11 - CANCELLATIONS AND REFUNDS

\* \* \*

**C. Termination After Six Months of Occupancy:** A Resident is entitled to a full refund of the Entrance Deposit if the Resident terminates or all Joint Residents terminate the Residence and Care Agreement more than six months after taking occupancy. The Resident must give Henry Ford Village 90 days [sic] notice in writing. The Resident shall be entitled to a full refund of the Entrance Deposit, less the applicable Monthly Service Package, if previously not paid, the Vacancy Fee, the Marketing Fee, and all other outstanding charges. The unearned portion of such refund shall be refunded within 45 days after the Notice is given or upon re-occupancy of the Unit, whichever occurs first. The earned portion of

-4-

the Entrance Deposit shall be paid within 30 days of the date that a new qualified Resident pays a new Entrance Deposit in full.[4]

* * *

**SECTION 12 - DIVORCE, DEATH OF SPOUSE, MARRIAGE**

**A. Death of a Single Resident:** If a single Resident dies during residency at Henry Ford Village, the Residence and Care Agreement is automatically terminated. The refund of the Entrance Deposit will be made within thirty (30) days of fulfillment of the following conditions: the Resident's or the Resident's representative's vacating the living unit, removing all possessions, paying all outstanding charges, and a new, qualified Resident paying a new Entrance Deposit in full.

Plaintiff's counsel admitted in the trial court that a copy of the RCA was attached to the disclosure statement.

Finally, also on June 8, 2006, decedent executed the RCA itself. With its attached schedules and table of contents, the RCA was 29 pages in length. Its table of contents listed the title and page of each of its sections and subsections. In pertinent part, the RCA provided:

Section 7.      REFUNDABLE ENTRANCE DEPOSIT

7.1      Payment of Refundable Deposit. Resident shall pay to HENRY FORD VILLAGE a total Entrance Deposit, as indicated in Schedule I, attached and incorporated hereto, on or before taking residence at the Community.

* * *

7.4      Refund of Deposit after Occupancy. After occupancy of the Continuing Care Unit and subject to the terms and conditions of Section 7.5 of this Agreement, HENRY FORD VILLAGE shall pay a refund of the Entrance Deposit to the Resident as follows.

7.4.1      Refund during Lifetime. These terms apply whether Resident or Henry Ford Village terminates the Agreement during Resident's lifetime . . .

* * *

7.4.2      Refund due to Death of Resident. If Resident dies after the Occupancy Date, HENRY FORD VILLAGE shall pay a

---

[4] The distinction between "earned" and "unearned" is not relevant to this appeal. It is undisputed that the entirety of decedent's entrance deposit was "earned" by the time of his death.

refund of the Entrance Deposit within thirty (30) days after fulfillment of the following conditions: (1) the Resident's personal representative or family has removed all possessions from the Continuing Care Unit; (2) the Resident's personal representative or family has signed a unit release for the Continuing Care Unit; (3) the Resident's personal representative or family has paid all outstanding fees and charges; and (4) a qualified new resident has signed a new Residence and Care Agreement for the continuing Care Unit and has settled in full by paying a new entrance deposit. The refund shall be payable by HENRY FORD VILLAGE to the beneficiaries named in a duly executed Refund of Entrance Deposit Form or, if there is no Refund of Entrance Deposit Form, to the personal representative of Resident's estate . . .

**Please be advised that HENRY FORD VILLAGE is not obligated to refund the full Entrance Deposit until, or unless, the conditions stated above are fulfilled, including the re-subscription of the Unit.**

7.5     Limitation on Amount of Refund.  The amount of the refund which HENRY FORD VILLAGE is obligated to pay to Resident or Resident's estate and which Resident or Resident's estate is entitled to receive shall normally be the amount of Resident's Entrance Deposit at termination minus any outstanding fees or charges unless paid separately . . .  With respect to the refund of any Earned Portion of the Entrance Deposit, if Resident's Continuing Care Unit is not reoccupied within a reasonable period of time, in HENRY FORD VILLAGE's sole discretion, by a qualified new resident with an Entrance Deposit equal to or greater than Resident's Entrance Deposit, then HENRY FORD VILLAGE will so notify Resident or Resident's personal representative.  Resident or Resident's personal representative may then direct HENRY FORD VILLAGE to re-market the Continuing Care Unit for a discounted Entrance Deposit.  The amount of the discounted Entrance Deposit, when received from a qualified new resident, minus the Unearned Portion already refunded, will constitute the amount of the refund of the Earned Portion of the Entrance Deposit to Resident.

\* \* \*

Section 14.     MISCELLANEOUS PROVISIONS.

14.1     Documents Incorporated by Reference.  This Agreement includes the Admissions Application for residence, the Financial Information Form, the Resident Information Form, including Resident's medical records, if any, and the Refund of Entrance Deposit Form.  . . .  Resident acknowledges that HENRY FORD VILLAGE will rely on statements of Resident in these documents and warrants that all statements are true and complete to the best of Resident's knowledge.

* * *

14.4 <u>Entire Agreement</u>. This Agreement and the documents referenced in Section 14.1 represent the entire agreement between HENRY FORD VILLAGE, Resident, and Guarantor, if any, and supersedes all prior Agreements and negotiations. Except as contained herein or in any contemporaneous, written agreements, there are no promises or agreements between the parties.

* * *

14.6 <u>Disclosure Statement</u>. Resident hereby acknowledges that Resident received the latest disclosure statement of HENRY FORD VILLAGE at least three (3) days before signing this Agreement or before transferring any money to HENRY FORD VILLAGE, whichever is earlier, and has reviewed such statement.

Immediately above the signature lines was the statement:

This document is a legal contract. Signing this Agreement means that you are legally bound by its terms. Therefore, you should seek the advice of a legal or financial advisor.

Decedent initially paid an entrance deposit of $145,000.00, but in 2008 he transferred to a more expensive unit, which increased his total entrance deposit to $152,000.00.

## C. EVENTS FOLLOWING DECEDENT'S DEATH

Following decedent's death on April 30, 2013, his children removed his belongings from his unit, and HFV, through its agents, began to market the unit to new prospective tenants. The unit was listed for the original entrance deposit of $152,000.00. As of January 2014, the unit remained unoccupied. HFV sent correspondence to plaintiff opining that decedent's unit was likely overpriced due to the drastic decline in the real estate market. HFV indicated that the average entrance deposit recently charged for similar units was $129,000, and further that 24 similar units were available at the time. HFV noted that under § 7.5 of the RCA, if plaintiff wished to do so, he could agree to lower the unit's listed entrance deposit—at the expense of lowering the resulting refund commensurately—in hopes of pricing the unit competitively and thereby expediting reoccupancy. Plaintiff ultimately agreed to do so.

Therefore, on February 24, 2014, plaintiff and HFV executed a "discounted refund addendum" that, in significant part, agreed to discount the entrance deposit for decedent's unit to $136,000.00 pursuant to § 7.5 of the RCA. The addendum contained an acknowledgement that plaintiff's entrance deposit refund would be reduced by an equal amount. The addendum further provided that plaintiff had freely entered into the addendum, had read and fully understood § 7.4.2 and § 7.5 of the RCA, and had a reasonable opportunity to consult with an independent legal or financial advisor. Finally, the addendum provided:

This Addendum, including the exhibits hereto, constitutes the entire understanding between the parties and supersedes any and all other prior

agreements, written or oral, between the parties, with respect to the subject matter hereof . . . This Addendum does not terminate, amend or reform any provision of the RCA executed by Resident and HFV, which shall remain in full force and effect, except as expressly stated herein.

HFV eventually found a new occupant for the decedent's unit, who paid an entrance fee of $136,000. On December 1, 2016, HFV remitted a check to plaintiff, as successor trustee of decedent's trust, for $126,861.93, which represented the reduced refund amount of $136,000, minus uncontested fees of $9,138.07. Plaintiff accepted that refund amount, cashing HFV's check.

Plaintiff subsequently instituted this action against defendants. In his first amended complaint, which sought certification of a class action including all others similarly situated,[5] plaintiff alleged 12 counts, among them breach of contract, fraud, unjust enrichment, conversion (both statutory and common-law), a statutory cause of action under the LCDA, and civil conspiracy. Following several months of discovery, defendants all moved for summary disposition. At the ensuing motion hearing, the trial court entertained extensive oral argument and then ruled from the bench in defendants' favor. This appeal ensued.

## II. STANDARD OF REVIEW

We review de novo the trial court's ruling concerning summary disposition, the proper interpretation of the parties' agreement, and any questions of statutory interpretation. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016); *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 251-252; 901 NW2d 534 (2017).

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotations marks and citations omitted).]

"Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v*

---

[5] The trial court did not rule on class certification before granting defendants summary disposition. We likewise conclude that it is unnecessary to do so.

-8-

*Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

### III.  ANALYSIS

Plaintiff, in an exceedingly loquacious and difficult to comprehend brief, has presented an ostensible 20 distinct issues for this Court to address.  However, those stated issues resolve to seven effective claims.  In essence, plaintiff argues that the trial court erred in granting summary disposition: (1) to HFV on plaintiff's claim for breach of contract, (2) to all defendants on plaintiff's several fraud-based claims, (3) to all defendants on plaintiff's statutory claims under the LCDA, (4) to all defendants on plaintiff's claims for common-law and statutory conversion, (5) to all defendants on plaintiff's claim for unjust enrichment, (6) to all defendants on plaintiff's civil conspiracy claim, and (7) to defendant Redwood-ERC Management, LLC (Redwood-ERC) on plaintiff's "claim" of successor liability against it.  We disagree with all seven claims.

### A.  BREACH OF CONTRACT

We conclude that the trial court did not err by granting defendants summary disposition of plaintiff's claim for breach of contract.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).  There can be no serious dispute that the RCA is a contract, although plaintiff argues that the disclosure statement should also be deemed contractual.  HFV's alleged breach was, broadly, requiring plaintiff to accept a reduced refund.  The amount of that reduction is plaintiff's claimed damages.  Plaintiff's breach of contract claim is premised on first reforming the parties' contracts.  As noted, plaintiff admitted that HFV did not breach any term of the RCA as written, without either reformation or considering the disclosure statement to be part of the same contract.

Initially, HFV argues that we are precluded by the RCA's merger clause from considering the disclosure statement.  For purposes of resolving this appeal, we disagree.  "[I]t is a prerequisite to application of the parol evidence rule that there be a finding that the parties intended the written instrument to be a complete expression of their agreement with regard to the matters covered." *Hamade v Sunoco, Inc*, 271 Mich App 145, 167; 721 NW2d 233 (2006).  The merger clause provided that "[e]xcept as contained herein *or in any contemporaneous, written agreements,* there are no promises or agreements between the parties" (emphasis added).  The Receipt of Disclosure Statement was signed by both decedent and HFV's agents on the same date as the RCA.  We think it reasonable that decedent would have read, and thus relied on, both the RCA and the disclosure statement.  We will presume, although we do not decide, that the disclosure statement constitutes a "contemporaneous, written agreement," the consideration of which is not precluded by the RCA's merger clause.

Plaintiff properly concedes that under both the RCA *and* the disclosure statement, HFV's duty to refund the entrance deposit was contingent on several conditions precedent.  "A

condition precedent is a fact or event that the parties intend must take place before there is a right to performance." *Able Demolition v Pontiac*, 275 Mich App 577, 583; 739 NW2d 696 (2007) (quotation marks and citation omitted). "If the condition is not satisfied, there is no cause of action for a failure to perform the contract." *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 131; 743 NW2d 585 (2007). In particular, plaintiff accepts that HFV had no obligation to refund decedent's entrance deposit until decedent's unit was re-occupied and the new resident paid a new entrance deposit in full. Rather, plaintiff argues that § 7.5 of the RCA must be deemed unenforceable, and as a consequence he should have been entitled to a refund of the entirety of decedent's entrance deposit irrespective of the amount of the new entrance deposit.

Several of plaintiff's arguments rely on interpreting the word "refundable." Specifically, plaintiff notes that the entrance deposit is described in some documents as "100% refundable." Plaintiff apparently deems this to mean that the entirety of the deposit necessarily must be refunded, thus conflicting with § 7.5 of the RCA. We disagree. "Refundable" is not defined in the RCA, so we consult a dictionary. See *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). "Refundable" is an adjectival form of the verb "refund." *Merriam-Webster's Collegiate Dictionary* (11th ed). Importantly, the suffix in the word "refundable" is "-able," which—"chiefly in adjectives derived from verbs," e.g., "break*able*"—means "capable of, fit for, or worthy of (being so acted upon or toward)[.]" *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, the plain meaning of the word "refundable" is not the meaning suggested by plaintiff. A "100% refundable" sum is one that *can* be refunded entirely, not one that *necessarily will* be refunded entirely. Describing the deposit as "100% refundable" does not conflict with the existence of possible limitations on the amount of that refund.

Plaintiff further argues that decedent should be excused from any obligation to read the RCA, and therefore from being bound by the RCA. Plaintiff admits that as a general rule, "one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Int'l Transportation Ass'n v Bylenga*, 254 Mich 236, 239; 236 NW 771 (1931). Nevertheless, plaintiff contends that decedent was induced to execute the RCA by both fraudulent misrepresentations and acts of silent fraud. "Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party." *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239, 243; 733 NW2d 102 (2006) (quotation marks and citation omitted). Moreover, "Michigan has long recognized that an agreement may be reformed because of a unilateral mistake that was induced by fraud." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 380; 761 NW2d 353 (2008). Plaintiff concludes that if he could prove decedent was fraudulently induced into executing the RCA, the trial court could reform the RCA as plaintiff has requested.

To prevail on a theory of fraud in the inducement, a plaintiff must prove five essential elements, one of which is reasonable (or justified) reliance. *Barclae v Zarb*, 300 Mich App 455, 482; 834 NW2d 100 (2013); *Hamade*, 271 Mich App at 167; *Custom Data*, 274 Mich App at 243. We note that *all* of the above-described documents signed by decedent at least mentioned the RCA, and most of them either stated or implied that the entrance deposit refund was governed by the terms set forth in the RCA. The Refund of Entrance Deposit Form states:

> [t]he conditions for the refund of the Entrance Deposit are set forth in the Care
> Agreement. Resident and Resident's beneficiaries are subject to all terms and

-10-

conditions for the refund of the Entrance Deposit and should review the same carefully.

The "Helpful Information" sheet clearly explains that it "is not meant to replace the Residence and Care Agreement nor supercede [sic] any of its terms." The disclosure statement makes numerous references to the RCA, including an express statement that "[t]he Entrance Deposit is 100% refundable *in accordance with the terms of the Residence and Care Agreement*" (emphasis added). No reasonable person would, after reviewing the above documents, fail to appreciate that the RCA was the critical and controlling document. In any event, plaintiff admitted at his deposition that he did not know which documents decedent read before signing, or whether decedent viewed any allegedly misleading advertisements.

Even if we were to conclude that the disclosure statement is misleading, which we do not, plaintiff has not provided any evidence beyond speculation that decedent declined to read the RCA because he read the contents of the disclosure statement. Fraudulent inducement must be proved by clear and convincing evidence. *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976). Plaintiff could not merely rest on the allegations in his complaint. See MCR 2.116(G)(4); *Coblentz v City of Novi*, 475 Mich 558, 569; 719 NW2d 73 (2006). Instead, to survive summary disposition, plaintiff was required to adduce substantively admissible evidence to support each of the essential elements of his fraud-in-the-inducement theory. See MCR 2.116(G)(6); *Quinto v Cross & Peters Co*, 451 Mich 358, 363; 547 NW2d 314, 317 (1996). Plaintiff has not done so. Thus, the trial court correctly concluded that plaintiff's allegations of fraud in the inducement concerning the RCA did not preclude summary disposition of his claim for breach of contract.[6]

Consequently, we conclude that plaintiff is bound by the provisions of the RCA, including § 7.5. Plaintiff therefore attempts to minimize the importance of the refund addendum. However, "where one writing refers to another, the two writings are to be construed together," *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 389 n 27; 486 NW2d 600 (1992), "including any modifications agreed to by the parties" in *subsequent* writings, *Neville v Neville*, 295 Mich App 460, 469-470; 812 NW2d 816 (2012). In the refund addendum, plaintiff agreed to accept a discounted refund on behalf of the trust. Under the Michigan Trust Code, plaintiff, as successor trustee of decedent's trust (i.e., the named beneficiary of the refund), had legal authority to

---

[6] Plaintiff additionally argues that HFV failed to undertake reasonable or good-faith efforts to market the unit. See *Stewart v Henry Ford Village, Inc*, unpublished per curiam opinion of the Court of Appeals, issued January 28, 2014 (Docket No. 312130), slip op at pp 6-9. Unpublished opinions of this Court are not binding. MCR 7.215(C)(1). However, they may be instructive or persuasive. *Cox v Hartman*, 322 Mich App 292, 307-308; 911 NW2d 219 (2017). Nevertheless, *Stewart* is materially distinguishable: it appears that the Residence and Care Agreement in that case lacked a provision analogous to § 7.5 of the RCA here, and the plaintiff in *Stewart* did not agree to a reduced entrance deposit. Plaintiff's argument regarding HFV's alleged marketing infirmities largely depends on voiding § 7.5 of the RCA and the refund addendum.

modify decedent's agreement with HFV. See MCL 700.7817. Consequently, the parties' 2006 agreement must be construed in accordance with the refund addendum.

Because plaintiff recognizes that the refund addendum is—unless unenforceable—fatal to his breach of contract claim, he argues strenuously against its enforceability. He first contends that he was fraudulently induced to enter the refund addendum. However, plaintiff readily admitted at his deposition that he understood § 7.5 of the RCA and the terms of the refund addendum at the time that he executed the addendum. Plaintiff asserts that the addendum was fraudulently obtained because he was not provided a copy of the disclosure agreement prior to executing the addendum, but as discussed, because the RCA, including § 7.5, is binding, that omission is irrelevant. We conclude that the record provides no support for plaintiff's claim of fraudulent inducement.

Furthermore, plaintiff's attempts to avoid enforcement of the refund addendum are barred by the tender-back rule, under which a party seeking to set aside a compromise "must tender the recited consideration before there is a right to repudiate the release." *Stefanac v Cranbrook Ed Community*, 435 Mich 155, 165; 458 NW2d 56 (1990). An offer to tender back consideration "must occur not only within a reasonable time after execution of the agreement, but in *all* cases prior to or simultaneously with the commencement of any proceeding raising a legal claim in contravention of the agreement." *Stefanac*, 435 Mich at 159 (emphasis added). Furthermore, an offer to tender back must be made even "if it is apparent that it would not be accepted." *Randall v Port Huron, St C & MC Ry Co*, 215 Mich 413, 424; 184 NW 435 (1921). The only exceptions entail a waiver by the other party, or fraud in the execution, neither of which are present here. *Stefanac*, 435 Mich at 165.

Fraud in the execution exists when a party is induced, by fraud, to sign a document under the mistaken belief that he or she is actually signing something else. *Stefanac*, 435 Mich at 166. Plaintiff makes no such claim. Moreover, plaintiff has presented no evidence that he ever offered to tender back the discounted refund that he received. Even if he were to now make such an offer, it is too late. See *Stefanac*, 435 Mich at 159 (holding that tender back must occur before filing suit); *Randall*, 215 Mich at 424 (holding that a delay of "2¼ years . . . cannot be said to be a reasonable time as a matter of law."). Plaintiff cashed HFV's refund check on December 7, 2016, approximately eight months *after* he initiated this action in the trial court, and also about seven months after he had notice that HFV was asserting, as an affirmative defense, that plaintiff's claims in this action were barred absent "tender back of any refund received . . . " Indeed, even now, plaintiff has not indicated that he would be willing to tender back the partial refund if doing so was necessary to save his claims.

Plaintiff also contends that the RCA and the addendum are unenforceable under various provisions of the since-repealed LCDA. However, we are aware of no exception to the tender-back rule for claims brought pursuant to the LCDA, nor has plaintiff cited any authority suggesting an exception. On the contrary, in *Stefanac*, our Supreme Court held, "The *only* recognized exceptions in Michigan are a waiver of the plaintiff's duty by the defendant and fraud

in the execution." *Stefanac*, 435 Mich at 165 (emphasis added; citations omitted).[7] Nevertheless, we note that plaintiff has presented a baffling argument that the LCDA somehow prohibits disclosure statements from incorporating terms of the RCA by reference, apparently on the theory that an analogous statute in Pennsylvania expressly permits such incorporation by reference. We take this as a mangled attempt to invoke the doctrine of *expressio unius est exclusio alterius*, that "the expression of one thing suggests the exclusion of all others." *People v Wilson*, 500 Mich 521, 526; 902 NW2d 378 (2017). This argument might be plausible if plaintiffs were comparing one provision of Michigan's LCDA to another provision of Michigan's LCDA, but the mere fact that another state chose to expressly permit something in a different statute *that our Legislature did not see fit to expressly prohibit* is of no coherent significance.

In sum, we hold that that the trial court did not err by granting defendants summary disposition of plaintiff's breach of contract claim. Plaintiff failed to present sufficient evidence of reliance to support his theory that decedent was fraudulently induced into executing the RCA, and plaintiff cannot challenge the RCA or the refund addendum on the grounds he now argues without having first offered to tender back the partial refund that he accepted. He has failed to do so. In all other respects, we agree with plaintiff's concession that HFV breached no provision of any contract as written. Therefore, summary disposition of this claim was appropriate.

## B. FRAUD

Plaintiff offers no freestanding arguments concerning his fraud claims, but rather incorporates his arguments from his breach of contract analysis by reference. Reliance is an element of all forms of actionable fraud, including silent fraud. *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012); *Hamade*, 271 Mich App at 171.[8] As we have already explained, plaintiff failed to adduce sufficient evidence of reliance for his fraud arguments to

---

[7] Plaintiff's attempts to distinguish *Stefanac* are unpersuasive. In effect, plaintiff's argument is that, when a plaintiff signs a release of a valid, noncontingent claim (i.e., a claim already actually owed), the tender-back rule is inapplicable. Here, the claim *was* contingent—HFV only remarketed the unit at a lower entrance deposit, and later issued a refund based on that lower value, *because* plaintiff signed the refund addendum. Additionally, any factual differences between *Stefanac* and this case are immaterial. In *Stefanac*, our Supreme Court ruled unambiguously that the tender-back rule applies to release agreements. *Id*. at 165-166. The refund addendum is, in substance, a release agreement. Hence, the tender-back rule applies here.

[8] Plaintiff contends that the trial court erroneously held reliance to be an element of silent fraud, relying on a nearly 18-year-old persuasive federal decision, *Gasperoni v Metabolife, Int'l, Inc*, unpublished order of the United States District Court for the Eastern District of Michigan, issued September 27, 2000 (Case No. 00-71255). We disagree. The courts of this state are the ultimate arbiters of questions of state law. See *Montana v Wyoming*, 563 US 368, 377 n 5; 131 S Ct 1765; 179 L Ed 2d 799 (2011). Even assuming that *Gasperoni* represented an accurate statement of this state's common law at the time, subsequent Michigan decisions such as *Titan Ins Co* and *Hamade* have made clear that reliance is an essential element of a claim for silent fraud.

survive summary disposition. Moreover, "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994). See also *Titan Ins Co*, 491 Mich at 555 n 4 (explaining that a claim of fraud fails if "the allegedly defrauded party was given direct information refuting the misrepresentations."). In this case, decedent was given such direct information in a copy of the RCA, and plaintiff was given—and admittedly read and understood—a copy of the refund addendum. Plaintiff cannot succeed on a claim of fraud related to the terms of either of those agreements. There is no genuine issue of material fact that both plaintiff and decedent were given direct information that refuted any alleged misrepresentations about the terms of the RCA and the refund addendum. Summary disposition of all of plaintiff's fraud claims was properly granted.

### C. LCDA

Nor did the trial court err by granting defendants summary disposition of plaintiff's LCDA claim.[9] Plaintiff's claim is pursued under § 29(1) of the LCDA, former MCL 554.829(1), which provided a private cause of action for violations of § 6(1), among others,[10] as follows:

> A person who offers or sells a life interest or long-term lease in violation of section[] 6(1) . . . is liable to the person purchasing the life interest or lease for damages and repayment of all fees paid to the facility *less the reasonable cost of rental and care provided until discovery or until the violation should reasonably have been discovered* and with interest at 6% from the date of purchase and reasonable attorney fees and court costs. [Emphasis added.]

Section 6(1) of the LCDA, former MCL 554.806(1), in relevant part prohibited entities such as HFV from:

> (a) Employ[ing] a device, scheme, or artifice to defraud.

> (b) Mak[ing] an untrue statement of a material fact or fail to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

> (c) Engag[ing] in an act, practice, or course of business which operates or would operate as a fraud or deceit upon a person.

---

[9] Despite the repeal of the LCDA, plaintiff can nevertheless pursue a statutory cause of action under it because his claim accrued before the effective date of the repealing act. 2014 PA 488; MCL 8.4a; *Hurt v Michael's Food Ctr*, 249 Mich App 687, 692; 644 NW2d 387 (2002).

[10] The LCDA did *not* provide a private cause of action for alleged violations of § 8, which is the section that plaintiff contends mandates the express and explicit recitation of § 7.5 of the RCA in the disclosure statement. However, plaintiff correctly notes that the LCDA did provide a cause of action for more generally engaging in fraud or deceit.

Under MCL 554.806(2), "fraud" and "deceit" were expressly "not limited to the common law definitions of fraud and deceit, but include the provisions of section 6(1)."

We need not determine whether HFV did, in fact, engage in "fraud" or "deceit" within the meanings set forth in the LCDA. The plain language of § 29(1) unambiguously provides that damages exceeding "the reasonable cost of rental and care provided until discovery or until the violation should reasonably have been discovered" are an element of a claim pursued under § 29(1). Absent such damages, there is no liability to enforce, and consequently there is no claim.

As a matter of law, plaintiff cannot satisfy that damages element. Because plaintiff does not contest the propriety of the $9,138.07 in fees that HFV deducted from the discounted refund, the only potential damages figure that he has identified is $16,000—i.e., the difference between decedent's $152,000 entrance deposit and the $136,000 refund that was actually issued. Moreover, plaintiff alleges that his statutory claim did not accrue until after decedent's death, at which time plaintiff discovered that HFV would not refund the entire entrance deposit.

The codified monthly cost of care for decedent was $2,280 (i.e., 1.5% of his $152,000 entrance deposit). MCL 554.803(8); MCL 554.810(1)(d); Mich Admin Code, R 554.1(3). Accordingly, after just eight months of residency, the cost of care provided to decedent alone would have exceeded his purported damages of $16,000. Thus, we also need not consider "the reasonable cost of rental," which is *also* to be deducted from the damages figure under § 29(1). Decedent resided in the retirement community for more than six years. At the end of his sixth year of residency, the codified cost of the care provided to him would have been $164,160. Therefore, plaintiff's "reasonable cost of rental and care" necessarily exceeds the purported damages plaintiff has identified to support his LCDA claim. Thus, even if plaintiff had an otherwise viable claim for violations of § 6(1) of the LCDA, the trial court did not err by granting defendants summary disposition of that claim.

In any event, plaintiff has failed to make the requisite showing that defendants' conduct in this case constituted a violation of § 6(1). It is undisputed that HFV gave decedent a copy of all relevant documents, ample time to review them in their entirety, and repeated admonishment to seek independent legal counsel. For the reasons already discussed above, no reasonable person would have deemed the disclosure statement to be a substitute for the RCA itself. No rational trier of fact could conclude that defendants' conduct in connection with the "offer" or "sale" of decedent's unit was part of "a device, scheme, or artifice to defraud;" that defendants made "an untrue statement of a material fact" or failed "to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they [we]re made, not misleading;" or that defendants "[e]ngage[d] in an act, practice, or course of business which operate[d] or would operate as a fraud or deceit upon a person." Summary disposition of this claim was thus appropriately granted.

## D. CONVERSION

For dual reasons, the trial court also properly granted summary disposition of plaintiff's claims for statutory and common-law conversion. First, his claims are barred by the tender-back rule, because they conflict with the terms of the addendum, in which plaintiff agreed to accept

the discounted refund and to permit HFV to retain the balance of decedent's entrance deposit. See *Stefanac*, 435 Mich at 159.

Second, plaintiff's conversion claims fail on the merits. Plaintiff has presented no evidence that HFV had an obligation to keep intact or deliver the specific $152,000 that decedent paid, in two installments, for his entrance deposit. See *Dunn v Bennett*, 303 Mich App 767, 778; 846 NW2d 75 (2014). Nor has plaintiff presented any evidence that HFV's exercise of dominion over the $152,000 was either wrongful or contrary to the interests of decedent and his trust. See *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 351-352; 871 NW2d 136 (2015). Rather, under the terms of the 2006 agreement as amended by the refund addendum, plaintiff expressly *consented* to HFV's exercise of dominion over the $152,000. Even if plaintiff could definitively prove that HFV was obligated to refund the full $152,000 under the parties' agreement and failed to do so, "[t]he failure to perform a contractual duty cannot give rise to a tort action unless the plaintiff alleges a violation of a duty separate and distinct from the underlying contractual obligation." *Kisiel v Holz*, 272 Mich App 168, 172; 725 NW2d 67 (2006). We cannot discern any such separate and distinct duty in plaintiff's allegations.

Consequently, the trial court did not err by granting defendants summary disposition of plaintiff's conversion claims.

## E. UNJUST ENRICHMENT

The existence of an enforceable, express agreement between the parties covering the same subject matter entitles defendants to summary disposition of plaintiff's claim for unjust enrichment. See *Bellevue Ventures, Inc v Morang-Kelly Investment, Inc*, 302 Mich App 59, 64; 836 NW2d 898 (2013). Furthermore, because plaintiff's unjust enrichment claim seeks to recover funds that plaintiff agreed HFV could retain, it plainly contravenes the terms of the refund addendum. Accordingly, the tender-back rule bars plaintiff's claim for unjust enrichment. See *Stefanac*, 435 Mich at 159. Again, the trial court correctly granted summary disposition of plaintiff's unjust enrichment claim.

## F. CIVIL CONSPIRACY

We also reject plaintiff's argument that the trial court erred by granting defendants summary disposition of his claim alleging civil conspiracy. Plaintiff failed to adduce sufficient evidence of any separate actionable tort to survive summary disposition. See *Urbain v Beierling*, 301 Mich App 114, 132; 835 NW2d 455 (2013). Moreover, to the extent that his claim for civil conspiracy is based on allegations that defendants failed to comply with contractual duties, the claim cannot proceed as a matter of law. See *id*. Finally, because the tender-back rule bars plaintiff from avoiding enforcement of the refund addendum, plaintiff cannot cite any damages arising from the alleged civil conspiracy, which is the "foundation" of any civil conspiracy action. See *Fenestra, Inc v Gulf Am Land Corp*, 377 Mich 565, 594; 141 NW2d 36 (1966). Accordingly, the trial court did not err by granting defendants summary disposition of the civil conspiracy claim.

## G. SUCCESSOR LIABILITY

Finally, plaintiff argues that the trial court erred by granting defendant Redwood-ERC summary disposition of plaintiff's "claim" of successor liability against it. Although "successor liability" is commonly described as a "claim," it is truly a theory of liability that depends on an underlying breach of a legal duty or commission of underlying wrongful conduct. See *Chase v Michigan Tel Co*, 121 Mich 631, 637; 80 NW 717 (1899); *Stevens v McLouth Steel Products Corp*, 433 Mich 365, 370-379; 446 NW2d 95 (1989); *Lemire v Garrard Drugs*, 95 Mich App 520, 524; 291 NW2d 103 (1980). Because summary disposition of all other claims was appropriately granted in favor of defendants, this issue is moot. See *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014) ("We generally do not address moot questions or declare legal principles that have no practical effect in a case."). Even presuming that Redwood-ERC *could* be held liable for the acts and omissions of its predecessors under a theory of successor liability, because those predecessors were entitled to summary disposition, it necessarily follows that Redwood-ERC was also entitled to summary disposition.

## IV. CONCLUSION

The trial court's grant of summary disposition in favor of all defendants is affirmed. Defendants, having prevailed in full, may tax costs. MCR 7.219(A).

/s/ Amy Ronayne Krause
/s/ Christopher M. Murray
/s/ Stephen L. Borrello