*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

EILEEN NAMETH,

        Plaintiff-Appellee,

v

STEPHEN SOVIAR and ANDREA NAMETH-
SOVIAR,

        Defendants-Appellants.

UNPUBLISHED
June 13, 2025
9:05 AM

No. 368919
Macomb Circuit Court
LC No. 2021-003649-CH

---

STEPHEN SOVIAR and ANDREA NAMETH-
SOVIAR,

        Plaintiffs-Appellants,

v

EILEEN NAMETH,

        Defendant-Appellee.

No. 369747
Macomb Circuit Court
LC No. 2023-002306-CZ

---

Before: MALDONADO, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

These consolidated cases arise from the breakdown of a familial relationship following a joint purchase of a house on Fiore Trail in Clinton Township.[1] In Docket No. 368919, Stephen Soviar and Andrea Nameth-Soviar (the Soviars) appeal as of right the judgment entered in Eileen Nameth's favor following a jury award of $200,000 for statutory conversion. In Docket No. 369747, the Soviars appeal as of right the trial court's order summarily dismissing their claims

---

[1] *Nameth v Soviar*, unpublished order of the Court of Appeals, entered December 18, 2024 (Docket Nos. 368919 and 369747).

against Nameth that were filed in a subsequent lawsuit. For the reasons stated in this opinion, we vacate the judgment in favor of Nameth in Docket No. 368919 and remand for an entry of a judgment notwithstanding the verdict (JNOV) in the Soviars' favor, and we affirm the trial court order dismissing the Soviars' lawsuit in Docket No. 369747.

## I. BASIC FACTS

Nameth is Andrea Nameth-Soviar's mother and Stephen Soviar's mother-in-law. The circumstances leading up to the breakdown in their familial relationship started in 2012 when Nameth's husband had a stroke. As a result of his physical and mental condition following the stroke, Nameth, the Soviars, and several other family members began to consider his future living arrangements. Ultimately, Nameth and the Soviars decided that they would sell their houses and purchase a new house together. It is undisputed that Nameth contributed $200,000 toward the purchase of the new house. In turn, the Soviars contributed $60,000 and obtained a $180,000 mortgage for the balance of the purchase price. At trial, the Soviars contended that the $200,000 was a gift, but Nameth asserted that it was her share of the purchase price of a house that she would own jointly with the Soviars. The parties presented testimony and documentary evidence in support of their positions.

According to the Soviars, Nameth's behavior and temperament grew increasingly more intolerable while she was living with them. They assert that she would take long trips, leaving her husband in their care. Further, they stated that she would strike her husband and abuse him. Nameth denied the allegations of abuse and no claims of elder abuse were ever filed. Regardless, in 2021, Nameth's husband's health deteriorated further, resulting in his hospitalization and eventual admission into a nursing home.

In the meantime, the relationship between Nameth and the Soviars worsened. According to the Soviars, Nameth attempted to move her husband back into the house against the advice of social workers at his nursing home. They stated that, when they opposed the move, Nameth became enraged. At one point, Nameth and another family member "violently" demanded that the Soviars give back the $200,000 that Nameth had provided for the purchase of the house or to otherwise compensate her for the payment. Law enforcement was called to the house and asked Nameth and the other family member to leave. The next day the Soviars vacated the house. They stated that they were forced to "flee" because they were afraid of Nameth. Nameth was left in possession of the house. Eventually, the Soviars initiated an eviction proceeding against Nameth. She then left the house before the proceedings were completed. Her husband died on November 13, 2021.

Nameth filed an action against the Soviars alleging claims of concert of action, common-law and statutory conversion, fraud, intentional infliction of emotional distress, quiet title, unjust enrichment, elder abuse, promissory estoppel, and constructive trust. A jury rendered a verdict on the statutory conversion claim in the amount of $200,000 in her favor, but rejected her other claims.

During the pendency of Nameth's case, the Soviars filed a lawsuit against Nameth, alleging claims of common-law and statutory conversion, waste, and intentional infliction of emotional distress. In their complaint, they recounted Nameth's "intolerable" behavior, her alleged abuse of her husband, her desires that her husband leave the nursing home against the advice of the social

workers, and the fact that they had to flee the house because they feared Nameth. They also alleged that when Nameth vacated the house she caused extensive damage to it and took valuable personal property that belonged to them. The trial court dismissed the Soviars' claims after finding that they were barred by res judicata.

These consolidated appeals follow.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

We first address the Soviars argument that the trial court erred by summarily dismissing their claims against Nameth. We review de novo a trial court's decision on a motion for summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). Likewise, application of the doctrine of res judicata presents a question of law that we review de novo. *King v Munro*, 329 Mich App 594, 599; 944 NW2d 198 (2019).

### B. ANALYSIS

The doctrine of res judicata "bars a subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the claims in the second case were, or could have been, resolved in the first case." *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 346 Mich App 197, 202; 12 NW3d 20 (2023). In this case, the prior action (Nameth's lawsuit against the Soviars) was decided on the merits after a three-day trial. The parties to both actions were identical. The Soviars, however, contend that res judicata is not applicable because their claims could not have been resolved in the prior lawsuit. We disagree.

Michigan courts use a transactional test to determine if the matter could have been resolved in the prior case. *Washington v Sinai Hosp of Greater Detroit*, 478 Mich 412, 420; 733 NW2d 755 (2007). "The transactional test provides that the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." *Id.* (quotation marks and citation omitted). "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, and whether they form a convenient trial unit . . . ." *Adair v Michigan*, 470 Mich 105, 125; 680 NW2d 386 (2004) (quotation marks, citation, and emphasis omitted).

On appeal, the Soviars contend that their claim did not arise until 2021, whereas Nameth's claims arose between 2015 and 2021. As a result, they assert that their claims are not part of the same transaction. However, Nameth did not file her lawsuit until October 2021. That lawsuit was not resolved until September 2023. Thus, by exercising reasonable diligence, the Soviars could have brought their claims during the prior litigation. See *id.* at 123 (stating that the doctrine of res judicata "bars every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not.").

Moreover, the essential evidence or facts supporting the two lawsuits arose from the same operative group of facts. See *Washington*, 478 Mich at 420. Specifically, the parties decided to jointly purchase a house and live together. During the time that they lived together, their

relationship deteriorated. The Soviars testified that Nameth engaged in physical and mental abuse of her husband and that she would abandon him in their care while taking lengthy trips. Nameth denied the allegations. Law enforcement directed Nameth to leave the house on one occasion. Thereafter, the Soviars left Nameth in possession of the house because they were afraid of her. While in possession of the house, Nameth allegedly did not maintain it and, when she eventually left, she allegedly stole valuable personal property belonging to the Soviars. Because the claims in both cases arose from the same transactions, and because the Soviars could have raised their claims during the prior lawsuit if they had exercises due diligence, their claims are barred by res judicata.

The Soviars nevertheless contend that counterclaims are not compulsory under MCR 2.203. However, res judicata bars every claim arising from the same transaction. *Adair*, 470 Mich at 123. Res judicata does not distinguish between original, counter, or cross-claims. Accordingly, although the Soviars may not have been compelled by MCR 2.203 to file a counterclaim, that fact does not negate application of the doctrine of res judicata.

### III. AMENDMENT OF AFFIRMATIVE DEFENSES

### A. STANDARD OF REVIEW

In Docket No. 368919, the Soviars argue that the trial court abused its discretion by denying their motion to amend their affirmative defenses to include a statute-of-limitations defense. We review a trial court's decision regarding a party's motion to amend the pleadings for an abuse of discretion. *Sanders v Perfecting Church*, 303 Mich App 1, 9; 840 401 (2013). As our Supreme Court recently reiterated:

> At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome. . . . When the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment. [*Webster v Osguthorpe*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket Nos. 166627 & 166628); slip op at 16 (quotation marks and citation omitted).]

### B. ANALYSIS

Under MCR 2.111(F)(3), a party must file any affirmative defenses in a responsive pleading as originally filed *or as amended* pursuant to MCR 2.118. In turn, MCR 2.118(A)(2) provides that, except under circumstances not relevant to this case, "a party may amend a pleading only by leave of the court or by written consent of the adverse party." "Leave shall be freely given when justice so requires." MCR 2.118(A)(2). "A party may move to amend its affirmative defenses at any time, and leave should be granted freely unless doing so would prejudice the other party." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 230; 964 NW2d 809 (2020).

The trial court, however, retains discretion to deny a motion to amend. See *Sanders*, 303 Mich App at 9. Reasons for a court to deny a motion to amend include:

> (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue of allowance of the amendment, or (5) futility of the amendment. [*Wolfenbarger v Wright*, 336 Mich App 1, 19; 969 NW2d 518 (2021) (quotation marks and citation omitted).]

In denying the motion, the trial court noted that the lawsuit had been pending for two years. Although "[d]elay, alone, does not warrant denial of a motion to amend." *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997), in this case there was more than mere undue delay. Indeed, as recognized by the trial court, in the two-year period while the case was pending, the Soviars filed multiple pleadings that included affirmative defenses, with the latest being filed in January 2023. In that amendment, they raised 18 affirmative defenses, but did not include the statute of limitations as a defense. And, rather than moving to amend their affirmative defenses again to raise the statute of limitations as a defense, the Soviars first raised the defense in a partial motion for summary disposition that they filed in May 2023. Following oral argument on that motion, the trial court concluded that the defense was waived because it had not been properly pleaded. Thereafter, on July 24, 2023, the Soviars filed a motion to amend their affirmative defenses to include a statute-of-limitations defense. The reason they proffered for their failure to earlier raise the defense was simply that their previous lawyer had neglected to raised it. That is, the basis for their late amendment was the alleged neglect of their prior lawyer, not a claim that they had just discovered the basis for their defense. Regardless, trial was set to begin on September 12, 2023. Given the record in this case, the trial court did not abuse its discretion by denying the motion to amend the affirmative defenses. Rather, the court chose one reasonable and principled outcome, and it is proper that we defer to the court's judgment. See *Webster*, ___ Mich at ___; slip op at 16.

## IV. JNOV

### A. STANDARD OF REVIEW

Next, the Soviars argue that the trial court should have granted their motion for JNOV because the jury verdict was contrary to law. We review de novo a trial court's decision on a motion for JNOV. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). The evidence and all legitimate inferences are viewed in a light most favorable to the nonmoving party. *Id*. "Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

Nameth's claim for statutory conversion is based upon MCL 600.2919a, which provides "a remedy against a person who steals or embezzles property or converts property to the other person's own use." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 354; 871 NW2d 136 (2015). MCL 600.2919a provides:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

(a) Another person's stealing or embezzling property or converting property to the other person's use.

In this case, Nameth's conversion claim is premised upon an alleged oral agreement that she had with the Soviars. According to Nameth, under the terms of the agreement, she would give the Soviars $200,000 as a down payment for the Fiore Trail house, the Soviars would obtain a mortgage to pay for the remainder of the purchase price, and the parties would share ownership of the house. Statutory conversion, however, is a tort claim. *Aroma Wines*, 497 Mich at 361 ("[T]he tort established in MCL 600.2919a(1)(a) is not the same as common-law conversion."). In determining whether a tort action may exist on the basis of a contractual promise, "[t]he threshold inquiry is whether the plaintiff alleges violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Const Corp v Mich Bell Telephone Co*, 454 Mich 65, 84; 559 NW2d 647 (1997). The "failure to perform a contractual duty cannot give rise to a tort action unless the plaintiff alleges a violation of a duty separate and distinct from the underlying contractual obligation." *Smith Living Trust v Erickson Retirement Communities*, 326 Mich App 366, 395; 928 NW2d 227 (2018). When such a separate and distinct duty cannot be discerned from the record, a plaintiff's statutory conversion claim will fail. *Id*.

Here, Nameth did not allege any other duties beyond the one imposed by the parties' alleged agreement. Additionally, the court ruled during its consideration of the Soviars' motion for directed verdict that the Soviars' did not owe a fiduciary duty to Nameth. That ruling has not been appealed. Thus, on this record, the only duty to perform arose from the contract, which cannot support Nameth's action in tort. Because Nameth did not establish that there was a duty separate and distinct from the duty arising from the alleged oral contract, an essential element of her tort claim was unproven. As a result, the trial court erred by denying the Soviars' motion for JNOV.

On appeal, Nameth directs this Court to *Dep't of Agriculture v Appletree Marketing, LLC*, 485 Mich 1; 779 NW2d 237 (2010), as support for her claim that conversion occurred. In that case, the defendants used the plaintiffs' funds for an improper purpose. *Id*. at 13. However, in *Appletree Marketing*, the plaintiffs did not allege that the defendants had breached a contract. *Id*. at 16. Rather, the defendants were trustees of the assessments due to the plaintiffs and they owed the plaintiffs fiduciary duties. *Id*. at 16-17. Given that there is no fiduciary relationship in this case, *Appletree Marketing* is inapposite.

In Docket No. 368919, we vacate the judgment in favor of Nameth and remand for entry of a JNOV in favor of the Soviars. In Docket No. 369747, we affirm. No taxable costs are awarded, neither party having prevailed in full. MCR 7.219(A).

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michael J. Riordan